1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

JOHN B. KENNEY,

                                    Plaintiff,

          vs.

THE CITY OF SAN DIEGO &
FEDERAL & PRIVATE
CONTRACTOR INTELLIGENCE
COMMUNITY AND SECURITY
POLICE - STATE INDUSTRIAL
COMPLEX CONSPIRATORS, SAN
DIEGO POLICE DEP'T, (SDPD)..., et
al.,

                                    Defendants.

CASE NO. 13cv248 WQH (JLB)

ORDER

HAYES, Judge:

     The matters before the Court are: 1) the motion for summary judgment (ECF No. 330) filed by Defendant Lawrence, 2) the motion for summary judgment (ECF No. 331) filed by Defendant Thompson, 3) the motion for summary judgment (ECF No. 332) filed by Defendant Stum, and 4) the motion for summary judgment (ECF No. 333) filed by Defendants City of San Diego and San Diego Police Department.

## FACTS

     On October 21, 2013, Plaintiff filed a First Amended Complaint ("the Complaint") alleging that he was subjected to the deprivation of his rights under federal and state law as a result of his involvement with the Occupy San Diego protests in late 2011 and early 2012.  (ECF No. 21).  The Complaint alleged facts describing five

incidents involving the San Diego Police Department ("SDPD"), three named San Diego Police Officers, and Doe San Diego Police Officers 1-200.

On January 28, 2014, the Court granted the motion to dismiss portions of the Complaint filed by the City Defendants and the Sheriff's Department. (ECF No. 33).

On July 17, 2015, Plaintiff filed a motion for leave to substitute Doe Defendants to include the officers identified by counsel for the Defendants as involved in the incidents on October 14, 2011; December 9, 2011; and January 31, 2012. (ECF No. 321-3). On August 25, 2015, this Court filed an order denying the motion to substitute the Doe Defendants.

On August 13, 2015, Defendants Lawrence, Thompson, Stum, City of San Diego, and San Diego Police Department filed separate motions for full or partial summary judgment. (ECF Nos. 330, 331, 332, and 333).

On February 17, 2016, Plaintiff filed responses to each of the summary judgment motions.

On February 29, 2016, Defendants filed replies to each of the summary judgment motions.

The Complaint alleges facts describing five incidents on the following dates: October 14, 2011; November 2, 2011; December 10, 2011; January 31, 2012; and March 24, 2012. The motions for summary judgment before the Court involve three named San Diego Police Officers in the following three incidents: Defendant Thompson, November 2, 2011; Defendant Lawrence, January 31, 2012; and Defendant Stum, March 24, 2012. There are no facts before this Court seeking summary judgment for the alleged actions of the Doe San Diego Police Officers on October 14, 2011; and December 10, 2011.

**October 14, 2011**

The Complaint alleges that on October 14, 2011, "Plaintiff was lawfully at San Diego City Plaza, located on B St., San Diego ... (SD Plaza), peacefully exercising his 1st Amendment rights of Free Speech," when "Plaintiff personally was assaulted 4

times by various SDPD cops, including, two times having his arm aggressively assaulted with a 'flesh-ripper' device." (ECF No. 21 at 10). During the last of the four assaults on October 14, 2011, an SDPD officer "grabbed [Plaintiff] by the throat and then slammed him to the ground on his back," and sprayed Plaintiff in the face with pepper spray. *Id*. The Complaint alleges that the SDPD officers, named as San Diego Police Officer Does 1-200, involved in this incident violated his constitutional rights to be free from unlawful seizure and excessive force, and that the supervisors of the SDPD failed to train and supervise the officers.

The Complaint does not identify any officers by name. However, the record in this case contains a police report which purported to detail the actions of a San Diego Police Officer which took place on October 14, 2011 at a demonstration at the city concourse in which the officer used physical force and pepper spray against demonstrators. (ECF No. 326). There is no motion addressing these alleged facts pending before the Court.

**Defendant Thompson, November 2, 2011**

On November 2, 2011, Officer Scott Thompson of the San Diego Police Department was assigned to provide traffic support for a march associated with Occupy San Diego, along with several other motor officers. At approximately noon, Officer Thompson and other motor officers stood with their motorcycles in the parking lot south of the intersection of Third Avenue and B Street. Officer Thompson heard a loud honking coming from a vehicle headed southbound on Third Avenue. The horn on the vehicle was blaring in prolonged, drawn out honks, with short delays in between long honks. The honking lasted more than a few seconds. (Declaration of Scott Thompson, ECF No. 333-10 at 2). Officer Thompson looked at his sergeant, who motioned him to cite the driver. Officer Thompson approached the vehicle and issued the driver a traffic citation for illegal use of horn, California Vehicle Code 27001(b). (ECF No. 331-7 at 2). The driver was Plaintiff John Kenney. (ECF No. 333-10 at 3).

A few months later, Officer Thompson appeared in traffic court regarding the

citation issued to Plaintiff Kenney.  Plaintiff Kenney appeared in order to contest the citation.  Plaintiff Kenney presented a video during the proceeding which showed him honking his horn. (Kenney deposition, ECF No. 331-5 at 18).  The traffic commissioner found Plaintiff Kenney guilty of the violation.  (San Diego Superior Court traffic file, ECF No. 331-6).  Plaintiff Kenney was not required to pay a fine.  (ECF No. 331-5 at 19).

The video Plaintiff Kenney presented at traffic court is Exhibit 3 in the record in support of Defendant Thompson's motion for summary judgment.  The video depicts a vehicle with the horn honking many times for more than seven seconds as the driver proceeds past protestors with signs.  (Exhibit 3 to Defendant Thompson's Motion for Summary Judgment).

Prior to November 2, 2011, Officer Thompson had never heard of or seen Plaintiff Kenney or had any interaction with Plaintiff Kenney. (ECF No. 333-10 at 2). Officer Thompson was not involved in any other incident relating to Plaintiff Kenney or to this case.

**December 10, 2011**

The Complaint alleges that on December 10, 2011 "Plaintiff was lawfully at SD Plaza, peacefully exercising his 1st Amendment rights of Free Speech.   At approximately 11:00 pm, Plaintiff was in the Civic Center Plaza with various demonstrators laying in his sleeping bag, resting.  Several SDPD officers arrived and told Plaintiff he would have to leave.  Plaintiff responded he was just resting." (ECF No. 21 at 11).  The Complaint alleges that Plaintiff was

> summarily handcuffed ... and arrested" by "SDPD officers" claiming "violation of **Codes PC 148(A)(1)**'Obstruction, etc./Pub. Ofcr.' and **MC54.0110** 'Illegal Encroachment.' Despite violating no law, being arrested at 11:30 pm on the night of 12/9/2011, and the fact his fiancé and others contacted Defendant Sheriff's department within 2-3 hours, ... and promptly paid $400.00 in bail, they were unable to do anything because Plaintiff was not 'in the system' until 12:30 pm the next day, paid the posted bail at that time, called the Sheriff's office again at 4pm, yet still he was not released until almost 21 hours later.

*Id.*  The Complaint alleges that Plaintiff suffered pain and humiliation as a result of

1    false arrest.

2         The Complaint does not identify any officers by name. There is no motion

3    addressing these alleged facts pending before the Court.

4    **January 31, 2012 incident**

5         Sgt. Kaseylee Lawrence states in her declaration,

6         On January 31, 2012, I was assigned to the Civic Center Plaza detail.
         There were several people associated with Occupy San Diego in the Civic
7        Center Plaza milling around in small groups while I was there.
         As I was standing near my patrol vehicle, which was parked on Third
8        Avenue, adjacent to Civic Center Plaza, SDPD officers Kevin Armentano
         and Steven Eraca approached me and informed me that a bag had been left
9        alone in the Plaza and appeared to be abandoned.
         I walked over to the area where the bag was and observed that no one was
10       standing around the bag. I watched the bag unattended for 7 to 10 minutes
         during which time, the bag remained unattended.
11       I then approved the officers request to impound the bag.
         After Officer Armentano and Officer Eraca took custody of the bag, a
12       small crowd of people began to follow them as they walked back to their
         patrol vehicle, which was also parked on Third Avenue.  They were
13       yelling "That's my stuff" or words to that effect.  I heard several people
         claiming ownership of the bag.
14       I advised the group that since the bag had been unattended and several
         people were now claiming ownership, that the bag was being impounded,
15       and they could go to the SDPD Property Room to claim it.
         I then approached Officers Armentano and Eraca's patrol vehicle and
16       directed them to leave the scene. . . .
         A person who I am now informed and believe is John Kenney stated that
17       the bag was his.  I told him that I did not know that the bag was his and
         reiterated how he could claim it.
18
     (Declaration of Lawrence, ECF No. 330-6 at 2-3).
19
         Plaintiff Kenney states in his declaration,
20
         At most, Plaintiff was away from his bag, by just a few yards, for 2 or 3
21       minutes, but probably a mere 1 to 2 minutes. Plaintiff always kept an eye
         on his bag, just yards away. . . .  It was never 'unattended.' which is why
22       Plaintiff immediately ran after Eraca & Armentano as he saw them as they
         literally snatched & ran: 'ran away with his bag.'  Plaintiff Kenney **readily**
23       **identified** himself numerous times to SDPD Lawrence & previously 'doe'
         defendants Eraca & Armentano, while she conferred on her radio with
24       someone who ordered the theft.

25       Eraca & Armentano literally backed their car up to Lawrence - who was
         on her body radio speaking to a supervisor - and awaited her approval
26       before they left. . . .  After she signaled . . . to leave, Kenney had to
         persevere to get her to tell when & where he could obtain his stolen
27       property.

28   (ECF No. 373-3 at 4-5, 8).  Kenney states that Defendant Lawrence had "knowledge of

                                    - 5 -                          13cv248 WQH (JLB)

'Kenney' prior to her participation in the conspiracy to seize & search his property."
*Id.* at 9.  Kenney disputes the statement by Lawrence in her Declaration that "Prior to January 31, 2012, I had never heard of or seen Plaintiff John B. Kenney, nor had any other interaction with him.  Prior to January 31, 2012, I had no knowledge that Mr. Kenney was involved with Occupy San Diego."  (ECF No. 330-6 at 3).  Kenney states in his declaration,

> Through her role as co-conspirator with SDPD & COSD that is absolutely false.  SDPD knew who I was, I was in Court against them at the time.  The Courtroom guards/Sheriff knew who I was, I was in Court against them all the time. . . . Eraca & Armentano definitely heard of Kenney. . . . They were involved in at least two (2) incidents prior to this concerning Plaintiff.  (10/14/11 assaults & 12/9/11 arrest.)" . . .

> Lawrence & collective conspiratorial acts & cops at SDPD & various fusion centers, etc. had 100% 'knowledge' the 'bag' was Plaintiff Kenney's.  They had targeted it many times, including in 2008, when SDPD helped Carlsbad PD after they improperly searched his bag by 'impounding' Plaintiff's car. . . .

> Lawrence herself admits she was on the Occupy detail & saw "many Occupy" people in small groups in her own declaration.  She was on her cell phone 'conspiring' & directing Eraca & Armentano.  Eraca & Armentano drove first back to Sgt.  Then drove away on her command, after she received direction herself on cell phone.

> Eraca & Armentano had already arrested Plaintiff once, and were there when he was assaulted multiple times.

(ECF No. 373-3 at 11-15).[1]

The video of this incident shows police officers and a police car.  An individual in the background states "Officer, where can I get my stuff from.  Those are mine."  The individual repeats "those are mine" a number of times while the two officers get into the police car.  The police car backs up a few feet and stops next to a third officer.  The police car then leaves.  The video continues to show a police officer with an individual asking how to recover the bag and the officer stating go to the property room of the police department. (Exhibit 2 in Support of Kaseylee Lawrence's Motion for

---

[1] Miki Shimada, states in her declaration "John's, Plaintiff's, backpack has been targeted by San Diego law enforcement for a long time, this was continued SDPD abuse & 'theft'" (ECF No. 378 at 15).  Shimada states that she was not there on January 31, 2012 when Plaintiff's bag was impounded but "helped John finally find his 'backpack.'"  *Id.* at 13.

Summary Judgment).

**March 24, 2012 incident**

On March 24, 2012, Parking Enforcement Officer David Stum was working as a trainee with Field Training Officer Dan Dierdorff.  Officer Dierdorff directed Officer Stum to the intersection of 4th Avenue and Nutmeg Street for traffic enforcement.  At approximately 11:27 p.m., Officer Stum observed a vehicle roll through the stop sign at 4th Avenue and Nutmeg, failing to come to a complete stop.  (Declaration of Officer Stum, ECF No. 322-12 at 2).  Officer Stum activated his patrol vehicle's lights and radioed in to dispatch as the vehicle pulled over.  Officer Stum contacted the driver and asked for license and registration.  The driver provided a license identifying him as Plaintiff John Kenney.

Officer Stum issued a traffic citation for a violation of California Vehicle Code § 21461(a) and informed Plaintiff Kenney that he could contest the citation in court.  (Exhibit 1, ECF No. 322-5 at 2).  A video depicting the stop and the issuance of the citation is Exhibit 2 in the record.  A few days later, Officer Stum was advised that a violation of California Vehicle Code  § 22450(a) was more appropriate for this traffic stop and Officer Stum issued a Notice of Correction amending the citation.

A few months later, Officer Stum appeared in traffic court regarding the citation.  Plaintiff Kenney appeared in order to contest the citation.  The traffic court found Plaintiff Kenney guilty of this traffic violation.  (Exhibit 4, ECF No. 322-7 at 2).  Plaintiff Kenney paid the fine.

Officer Stum was not involved in any other incident related to Plaintiff Kenney or this case.

Miki Shimada, a passenger in the Plaintiff's vehicle on March 24, 2012 at the time of the stop, states in a declaration, "Plaintiff Kenney never committed any crime on . . . 3/24/12 . . . we stopped at the stop sign."  (ECF No. 378 at 5).  Shimada states in her declaration,

> I told Stum we 'stopped.'  I felt he was 'stalking' and 'targeting' John  for 'harassment.'  John had just come back from LA, where he was doing an

1
2

      Occupy like thing with 99% Spring campaign. Everyone knew Occupy was targeted by many elements of USA, SD and law enforcement as a 'political affiliation'. It was on the news at the time. I know since 2008 police have targeted John and his bag.

3

*Id.* at 13, 15.

4

**Policies and Procedures**

5
6
7

      The San Diego Police Department and the City of San Diego submit a series of declarations by police officers with personal knowledge of the policies, practices, procedures and customs at the time of the incidents in this case.

8
9
10
11
12
13
14

      With respect to free speech activities, it was the policy, practice, procedure and custom of the San Diego Police Department at the time of the incidents alleged in this case to "allow protestors to legally protect or engage in free speech activities, but also to create a safe environment for everyone involved and ensure no laws are violated." (Declaration of Gregory Olsen, ECF No. 333-8 at 3). Officers were trained and instructed at the San Diego Regional Police Academy and at In-Service training sessions regarding this policy.

15
16
17
18
19
20
21

      With respect to the use of force, it was the policy, practice, procedure and custom of the San Diego Police Department at the time of the incidents alleged in this case to "train its personnel in the use of the safest, most humane restraint procedures and force options currently known." (Declaration of David Bautista, ECF No. 333-13 at 3). The Officers were trained and instructed at the San Diego Regional Police Academy and at In-Service training sessions regarding this policy. This training included policies and procedures for encountering passive resistance and active resistance.

22
23
24
25
26
27

      With respect to use of force to effect a detention or arrest, it was the policy, practice, procedure and custom of the San Diego Police Department at the time of the incidents alleged in this case to train officers that "the officer should apply a level of force that is reasonable for the situation." (Declaration of Michael Thim, ECF No. 333-4 at 3). Officers were trained and instructed at the San Diego Regional Police Academy and at In-Service training sessions regarding this policy.

28

      With respect to arrests, it was the policy, practice, procedure and custom of the

San Diego Police Department at the time of the incidents alleged in this case "that arrests may only be made when the officer has probable cause to believe that the arrestee has committed a criminal offense." (Declaration of Gregory Olsen, ECF No. 333-8 at 4). Officers were trained and instructed at the San Diego Regional Police Academy and at In-Service training sessions regarding this policy.

With respect to abandoned property, it was the policy, practice, procedure and custom of the San Diego Police Department at the time of the incidents alleged in this case "to impound property that appeared to be found, abandoned, lost or otherwise unclaimed. Personal property found on public property without a readily identifiable owner is presumed to be abandoned property pursuant to San Diego Municipal Code section 54.0212." (Declaration of Ray Christian, ECF No. 333-15 at 3).

With respect to traffic stops and traffic citations, at the time of the subject incident, "it was the policy, practice, procedure and custom of the San Diego Police Department to train its officers that a traffic citation may be issued to any violator who jeopardizes the safe and efficient flow of vehicular or pedestrian traffic." (Declaration of Lawrence Hall, ECF No. 333-17 at 3).

## STANDARD OF REVIEW

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *See id.* at 248. The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its initial burden, the non-moving party must go

beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997); *Liston v. County of Riverside*, 120 F.3d 965, 977 (9th Cir. 1997) ("For the purposes of summary judgment, . . . we must assume the nonmoving party's version of the facts to be correct.") (citation omitted).

## ANALYSIS

### Defendant Thompson motion for summary judgment (ECF No. 331)

The Complaint alleges that Plaintiff is entitled to recover damages against Defendant Thompson for the deprivation of his federal constitutional rights under 42 U.S.C. § 1983 and violation of his rights under state law. Plaintiff alleges that Defendant Thompson unlawfully issued him a traffic citation for illegal use of his vehicle horn when Plaintiff honked his horn in support of a group of demonstrators as Plaintiff drove by the San Diego Civic Plaza on November 2, 2011. (ECF No. 21 at 10).

Defendant Thompson contends that he initiated a traffic stop on November 2, 2011 based upon probable cause, that he lawfully issued Plaintiff a traffic citation for illegal use of horn, and that the traffic court found Plaintiff guilty of the infraction. Defendant Thompson asserts that there was no violation of Plaintiff's constitutional rights on November 2, 2011, that he would be entitled to qualified immunity for his actions on November 2, 2011, and that any damage claim for false arrest/detention is barred by *Heck v. Humphrey*.[2]

Plaintiff contends that he was repeatedly targeted by the San Diego Police

---

[2] 512 U.S. 477 (1994).

Department even though he committed no crime or infraction.  Plaintiff contends that Defendant Thompson was ordered by his supervisor to cite him for "*1st Amendment* 'tooting' of his horn for a 'few seconds.'" (ECF No. 376 at 8).  Plaintiff contends that there is nothing illegal about tooting his horn within the march zone in support for a march.

Title 42 U.S.C. § 1983 provides a cause of action against any person who, under color of state law, deprives any citizen of any rights, privileges, or immunities secured by the Constitution and laws of the United States.  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Id.*

"In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct."  *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation omitted).  "[T]he proper inquiry asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."  *Id.* (internal quotation omitted).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court examined whether a state prisoner could challenge the constitutionality of his conviction under 42 U.S.C. § 1983 based upon alleged unconstitutional actions by the police and prosecutors.  The Court stated,

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove  that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486-87.  The Supreme Court stated, "the district court must consider whether a

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.   Since *Heck*, the cases in the Court of Appeals for the Ninth Circuit have made clear that the rule of *Heck* is not limited to persons in custody and takes into consideration the timely pursuit of available relief to challenge the allegedly unconstitutional conviction. *See Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002) (state prisoner challenging loss of good time credit was not barred by *Heck* upon his release where he immediately pursued relief after the incident and could not seek habeas relief because of the shortness of his prison sentence); *Guerrero v. Gates*, 442 F.3d 697 (9th Cir. 2006) (ex-inmate's § 1983 suit that officials had conspired to subject him to wrongful arrest and malicious prosecution were barred by *Heck* where he did not challenge his conviction prior to filing his § 1983 suit).

In *Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015), the district court found that plaintiff's § 1983 claim based on unlawful search and seizure was barred by *Heck* where plaintiff pled no contest to disturbing the peace and did not appeal his conviction.   The Court of Appeals affirmed the finding of the district court that a judgment in favor of the plaintiff in the § 1983 action would necessarily imply the invalidity of his infraction offense and stated, "We are not an alternative forum for challenging his conviction." *Id.* at 1192.

In this case, the record contains a video which shows a vehicle driving by Civic Center Plaza and the driver honking the horn more than twenty times over a period of more than seven seconds. (Exhibit 3 to Defendant Thompson's Motion for Summary Judgment).   Defendant Thompson made a traffic stop, and issued Plaintiff a traffic citation for California Vehicle Code 27001(b).[3]    The undisputed facts show that Plaintiff appeared in traffic court to contest the citation, showed the traffic

---

[3] California Vehicle Code section 27001 states in pertinent part: "(a) The driver of a motor vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn. (b) The horn shall not otherwise be used, except as a theft alarm system . . ."

commissioner the video of the incident, and the traffic commissioner found Plaintiff guilty of the violation. The citation in the record of this case remains valid.

Under the facts of this case, Plaintiff's attempt to recover damages for conduct of Defendant Thompson stopping his vehicle and issuing a citation necessarily implies the invalidity of the citation. The Court concludes that a claim for damages based upon the lawful stop and the subsequent citation is barred by *Heck*. *See Lyall*, 807 F.3d at 1192 ("We are not an alternative forum for challenging his conviction."). There are no facts alleged or presented in the record which would fall outside the *Heck* bar. *See Guerrero v. Gates*, 442 F.3d at 703 (*Heck* does not bar Plaintiff's § 1983 for excessive force because the "officers' alleged use of force during Guerrero's arrest does not preclude the possibility that Guerrero was still guilty of possession of narcotics").

Based upon the undisputed facts in the record, there are no facts to support a state law claim for negligence, false arrest, intentional infliction of emotional distress, violation of California Civil Code §§ 51 or 52, or invasion of privacy against Defendant Thompson or any Doe Defendant involved in the November 2, 2011 incident. The Court concludes that Defendant Thompson is entitled to summary judgment in his favor on all claims in the Complaint.

**Defendant Lawrence motion for summary judgment (ECF No. 330)**

The Complaint alleges that Plaintiff is entitled to recover damages against Defendant Lawrence for the deprivation of his federal constitutional rights under 42 U.S.C. § 1983 and violation of his rights under state law. Plaintiff alleges that Defendant Lawrence unlawfully seized his bag on January 31, 2012 at the Civic Center Plaza while he was peacefully exercising his First Amendment right of free speech.

Defendant Lawrence contends that summary judgment should be entered on Plaintiff's claim for unlawful seizure of his bag. Defendant Lawrence asserts that the facts in the record show that impounding Plaintiff's bag was lawful because the bag was found unattended on public property without a readily identifiable owner. Defendant Lawrence asserts that the actions of the police officers seizing Plaintiff's bag

were in accord with the policies and procedures of the San Diego Police Department with respect to an unattended bag in a public space.

Plaintiff contends that he did not leave his bag unattended at any time. Plaintiff asserts that the Defendant Doe San Diego Police officers who seized his bag and Defendant Lawrence who approved the seizure were familiar with him from prior occasions and knew that the bag belonged to him. Plaintiff asserts that police officers targeted him and seized his bag in violation of his First and Fourth Amendment rights.

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. at 161. "[A] public official is liable under § 1983 only if he *causes* the plaintiff to be subjected to a deprivation of his constitutional rights." *Baker v. McMollan*, 443 U.S. 137, 142 (1979) (internal quotation marks omitted) (emphasis in original). A supervisor is liable for the constitutional violations of subordinates "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007).

"A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "Warrantless searches or seizures of abandoned property do not violate the fourth amendment." *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986). However, the Fourth Amendment protects an individual's interest in their personal property. *See Lavan*, 693 F.3d at 1032. In order to demonstrate a First Amendment violation, "a plaintiff must provide evidence showing that by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Mendicino Envtl. Ctr.*, 192 F.3d at 1300.

In this case, there is a genuine issue of material fact as to whether the Doe Police

Officers[4] and Defendant Lawrence seized abandoned property or unlawfully seized Plaintiff's bag in order to chill Plaintiff's political speech. Defendant Lawrence states that she observed an unattended bag for 7 to 10 minutes without a readily identifiable owner. Plaintiff states that he did not leave his bag unattended and that the Doe Police Officers Defendants and Defendant Lawrence repeatedly targeted him and his bag. Plaintiff states that he had been assaulted and arrested by the same Doe Police Officer Defendants acting with Defendant Lawrence on two prior occasions. The Court concludes that Defendant Lawrence is not entitled to summary judgment on the first claim for relief under 42 U.S.C. § 1983 for First and Fourth amendment claims and state claims for illegal seizure.

The undisputed facts establish that Plaintiff cannot prevail against Doe Defendant Police Officers or Defendant Lawrence for acts which took place on January 31, 2012 for a claim for excessive force, illegal search, Sixth Amendment, right to counsel, Eighth Amendment, Ninth Amendment, equal protection, Article Four, and false arrest, negligence, intentional infliction of emotional distress, and invasion of privacy. The Court concludes that Defendant Lawrence is entitled to summary judgment on a claim for excessive force, illegal search, Sixth Amendment, right to counsel, Eighth Amendment, Ninth Amendment, equal protection, Article Four, false arrest, negligence, intentional infliction of emotional distress, and invasion of privacy.

**Defendant Stum motion for summary judgment (ECF No. 333)**

The Complaint alleges that Defendant Stum subjected Plaintiff to deprivation of his constitutional rights under 42 U.S.C. § 1983 and violated his rights under state law. Plaintiff alleges that Defendant Stum unlawfully stopped his vehicle and ticketed him for a rolling stop.

Defendant Stum contends that the facts in the record establish that he did not violate any of Plaintiff's rights under the First Amendment or the Fourth Amendment, that he is entitled to qualified immunity for all action taken on March 24, 2012

---

[4] Sargeant Lawrence identifies these officers as Officer Armentano and Officer Eraca.

involving Plaintiff, and that any damage claim is barred by *Heck*.

Plaintiff contends that someone from the San Diego Police Department was stalking him, and that he was "repeatedly targeted  on 10/14/11, 11/2/11, 12/9/11, 1/31/12, and 3/24/12." (ECF No. 375 at 3).  Plaintiff asserts that he had been at a "99% Spring training session all day" in Los Angeles prior to "the bogus stop."  (ECF No. 375-2 at 7.)  Plaintiff asserts that "he committed no crime or infraction." *Id.*

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*,  504 U.S. at 161.  In *Heck*, the United States Supreme Court directed that a district court considering whether a claim for damages bearing a relationship to a conviction is cognizable under § 1983 "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487.  In *Lyall*, the district court found that plaintiff's § 1983 claim based on unlawful search and seizure was barred by *Heck* where plaintiff pled no contest to disturbing the peace and did not appeal his conviction.  The Court of Appeals affirmed the finding of the district court that a judgment in favor of the plaintiff in the § 1983 action would necessarily imply the invalidity of his infraction offense and stated, "We are not an alternative forum for challenging his conviction."  807 F.3d  at 1192.

In this case, the undisputed facts in the record show that Defendant Stum made a traffic stop of Plaintiff's vehicle, and issued Plaintiff a citation for a traffic violation for a rolling stop.  The undisputed facts show that Plaintiff appeared in traffic court to contest the citation, that the traffic commissioner found Plaintiff guilty of the violation, and that Plaintiff paid the fine.  Under the facts of this case, Plaintiff's attempt to recover damages for the traffic stop and the issuance of a citation based upon a claim of false arrest or unlawful detention necessarily implies the invalidity of the lawful stop and subsequent citation.  The Court finds that *Heck* bars Plaintiff's action for damages

under § 1983 against Defendant Stum.  There are no facts alleged or presented in the record which would fall outside the *Heck* bar.  *See Guerrero v. Gates*, 442 F.3d at 703 (*Heck* does not bar Plaintiff's § 1983 for excessive force because the "officers' alleged use of force during Guerrero's arrest does not preclude the possibility that Guerrero was still guilty of possession of narcotics").  The video of the stop shows that Plaintiff did not leave his vehicle, that Defendant Stum did not use any force or coercion against Plaintiff.  Defendant Stum initiated a traffic stop and issued a traffic citation.

Based upon the undisputed facts in the record, there are no facts to support a state law claim for negligence, false arrest, intentional infliction of emotional distress, violation of California Civil Code §§ 51 or 52, or invasion of privacy.

The Court concludes that Defendant Stum is entitled to summary judgment in his favor on all claims in the Complaint.

**Defendants City of San Diego and San Diego Police Department (ECF No. 333)**

In the second cause of action in the Complaint, Plaintiff brings a claim for unlawful policies, customs or habits under 42 U.S.C. § 1983 against the City and the SDPD.  Plaintiff alleges that his First Amendment rights to speech and his Fourth Amendment rights to be free from excessive force, unlawful arrest, and illegal seizure of his property were violated by police officers acting pursuant to the policies and procedures of the SDPD.

Defendants SDPD and City of San Diego contend that Plaintiff cannot prevail on a claim for unlawful policies, procedures, customs and habits, or common law causes of action.  Defendants assert that the facts presented in the record establish that the SDPD had lawful policies and procedures in place regarding free speech activities and protests, the permissible use of force, traffic stops, detentions, arrests, handcuffing, processing prisoners and impounding of abandoned property at all times relevant to the events in this case.  Defendants contend that the record establishes that adequate policies and procedures were in place, that the officers were trained in the policies and procedures, and that inadequate policies and procedures played no role in Plaintiff's

alleged injuries.  Defendants further contend that there can be no liability against a municipal entity based upon common law.

Plaintiff contends that Defendants failed to properly train police officers in the policies and that the Defendants deliberately orchestrated actions to harass and abuse protestors.  Plaintiff asserts that he was repeatedly targeted by police officers, and that he was slammed to the ground and assaulted by police officers while peacefully protesting.

A person deprives another of a constitutional right, where that person "does an affirmative act, participates in another's affirmative act, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made." *Hydrick v. Hunter*, 500 F.3d at 988.  A municipality or governmental entity cannot be found liable under section 1983 on a respondeat superior theory.  Rather, such liability can be imposed only for injuries inflicted pursuant to a governmental "policy or custom." *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 694 (1978).  In addition, there must be an affirmative link shown between the policy or custom and the particular constitutional violation alleged. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).  The alleged policy or custom must be the "moving force" of the constitutional violations in order to establish liability under section 1983. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell*, 436 U.S. at 694).

In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court determined that a municipality can be held liable for a constitutional policy if it is culpable for an unconstitutional application of its policy. The Court held that a municipality is culpable if its failure to adequately train police officers exhibits a "deliberate indifference to the rights of persons with whom the police come into contact." *Id*. at 388.  To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must establish (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "evidences a

deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." *Id*. at 389-91.

The facts in this record establish that the SDPD had constitutional policies and procedures and that the officers were trained and instructed regarding these policies. There are no facts in the record regarding the application of these policies on the October 14, 2011 and the December 9, 2011. The Court concludes that there is a genuine issue of material fact as to whether Plaintiff may prevail on his claim regarding actions taken by officers on January 31, 2012. At this stage in the proceedings, the Court does not conclude that Defendant City of San Diego and SDPD are entitled to summary judgment in their favor.

However, Defendants SDPD and City of San Diego are entitled to judgment in their favor on all claims in the Complaint for common law government tort liability. *See Searcy v. Hemet Unified School Dist.*, 177 Cal. App. 3d 792, 803 (1986) ("[I]n California all government tort liability is dependent on the existence of an authorizing statute or 'enactment'. . . "). All claims in the Complaint for negligence (third claim), assault (fourth claim), battery (fifth claim), negligent or intentional infliction of emotional distress (seventh claim), and invasion of privacy (twelfth claim) against Defendants San Diego Police Department and City of San Diego are dismissed.

**Doe Defendants 10/14/11, 12/09/11, and 01/31/12 incidents**

Plaintiff filed this action on January 30, 2013 naming Defendant Doe San Diego Police Officers #1-200. The Complaint and the First Amended Complaint alleged facts relating to the actions of Doe San Diego Police Officers on October 14, 2011; December 9, 2011; and January 31, 2012.

On November 7, 2014, Defendant City of San Diego served its initial disclosures which identified the police officers involved in these incidents. In late May of 2015, Plaintiff received discovery responses from the Defendant which identified the police officers involved in the five incidents alleged in the First Amended Complaint. *See* ECF No. 322.

On July 17, 2015, Plaintiff filed a motion for leave to substitute Doe Defendants to include the officers identified by counsel for the Defendants as involved in the incidents on October 14, 2011; December 9, 2011; and January 31, 2012.  (ECF No. 321-3).  On August 25, 2015, this Court filed an order denying the motion to substitute the Doe Defendants. (ECF No. 344).[5]  The Court finds that the interests of justice require the reconsideration of the order denying substitution of the Doe Defendants. Defendants are identified by Defendant City as involved in the incidents on October 14, 2011; December 9, 2011; and January 31, 2012.  The claims relating to these incidents cannot be resolved without the identified Defendants.

IT IS HEREBY ORDERED that the Court will allow substitution of Doe Defendants as requested in the motion to substitute (ECF No. 321) as follows:

Kevin Armentano, Steven Eraca, and Matt Koerber, as to the first claim for relief under for First Amendment and Fourth Amendment violations relating to the October 14, 2011 incident;

Kevin Armentano, Steven Eraca, David Mitchell, James Milano, Rodolphe Sainte-Agathe, Craig Shumate, and Erick Valdez as to the first claim for relief for First Amendment and Fourth Amendment violation relating to the December 10, 2011 incident; and

Kevin Armentano and Steven Eraca as to the first claim for relief for First Amendment and Fourth Amendment violations relating to the January 31, 2012 incident.  (ECF No. 321-3).

Plaintiff is granted 90 days from the date of this order to complete service pursuant the Rule 4 of the Federal Rules of Civil Procedure and to file proof of service in the record.  The Clerk of the Court shall issue the proper summons forthwith.  Any party may request the Court reopen discovery within 120 days of the date of this order.

IT IS FURTHER ORDERED that 1) the motion for summary judgment (ECF No.

---

[5] This Order erroneously stated that substituting the newly discovered Defendants would be "futile."  (ECF No. 344 at 6).

330) filed by Defendant Lawrence is denied in part and granted in part, 2) the motion for summary judgment (ECF No. 331) filed by Defendant Thompson is granted, 3) the motion for summary judgment (ECF No. 332) filed by Defendant Stum is granted, and 4) the motion for summary judgment (ECF No. 333) filed by Defendants City of San Diego and San Diego Police Department is denied in part and granted in part.

All claims in the Complaint against Doe Defendant Police Officers, Defendant Lawrence, SDPD, and the City of San Diego for acts which took place on January 31, 2012 for excessive force, illegal search, Sixth Amendment, right to counsel, Eighth Amendment, Ninth Amendment, equal protection, Article four, false arrest, negligence, intentional infliction of emotional distress, and invasion of privacy are dismissed.

All claims in the Complaint for negligence (third claim), assault (fourth claim), battery (fifth claim), negligent or intentional infliction of emotional distress (seventh claim), and invasion of privacy (twelfth claim) against Defendants San Diego Police Department and City of San Diego are dismissed.

All claims in the Complaint against all Defendants for the alleged actions taken on November 2, 2011 and March 24, 2012 are dismissed for the reasons stated in this order.

DATED:  March 29, 2016

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge