MARA W. ELLIOTT, City Attorney
GEORGE F. SCHAEFER, Assistant City Attorney
KATHY J. STEINMAN, Deputy City Attorney
California State Bar No. 221344
HANNAH GIRER-ROSENKRANTZ, Deputy City Attorney
California State Bar No. 310375
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone:  (619) 533-5800
    Facsimile:   (619) 533-5856
Attorneys for Defendants CITY OF SAN DIEGO, SAN DIEGO POLICE DEPARTMENT, KASEYLEE LAWRENCE AND MATTHEW KOERBER

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| JOHN B. KENNEY, | Case No.  13cv0248 WQH (AGS) |
|---|---|
| Plaintiff, | **DEFENDANTS' TRIAL BRIEF** |
| v. | |
| THE CITY OF SAN DIEGO; FEDERAL & PRIVATE CONTRACTOR INTELLIGENCE COMMUNITY AND SECURITY POLICE-STATE INDUSTRIAL COMPLEX CONSPIRATORS, SAN DIEGO POLICE DEPT (SDPD); SDPD EX CHIEF OF POLICE & THEN MAYOR OF SAN DIEGO SANDERS, SDPD CHIEF LANSDOWNE, SDPD OFFICERS THOMPSON, LAWRENCE, STUM & DOES 1-200; SAN DIEGO CITY ATTORNEY JAN GOLDSMITH, SAN DIEGO SHERIFF'S DEPT AND SHERIFF GORE; DOES 1-20,000 , | Judge: William Q. Hayes
Trial Date: November 7, 2017 |
| Defendants. | |

## I.     INTRODUCTION

Plaintiff John Kenney alleges claims resulting from his involvement in the Occupy San Diego movement.  Mr. Kenney claims that he has been targeted by the City of San Diego ("City") and San Diego Police Department ("SDPD") because of who he is and his association with Occupy San Diego.  City Defendants dispute these claims.  After multiple motions, the remaining defendants are SDPD Officer

Matthew Koerber, Sergeant Kaseylee Lawrence, the City and SDPD.  The remaining claims are: (1) § 1983 claim of excessive force and violation of First Amendment against Officer Koerber with respect to the October 14, 2011 incident; (2) § 1983 claim of unlawful seizure and violation of First Amendment against Sergeant Lawrence with respect to the January 31, 2012 incident; and (3) claim against the City and SDPD as to unlawful policies.

## II.   SUMMARY OF FACTS AND PROCEDURAL BACKGROUND

Plaintiff appears to believe that many people, many government agencies and entities, and private corporations are part of some vast conspiracy to, essentially, harm him.  He has a litigious history of suing various governmental agencies, and even foreign nations, for violating his rights.  (*See, e.g.*, *Kenney v. Japan, or "Japan, Inc."*, U.S.D.C. Central Dist., Case No. 11cv05341 PA (AJWx).  It is difficult to concisely state what the issues presented in that case were given that the complaint was 52 pages long; suffice it to say that Plaintiff believed that Japan, in conjunction with numerous other nations, agencies, corporations, and individuals, conspired to subject Plaintiff to repeated torture, physical abuse, crimes against humanity, discrimination, etc., both while he was living in Japan and upon his return to the United States

Here, Mr. Kenney's First Amended Complaint ("FAC") claims that he was subjected to a deprivation of his civil rights and other torts as a result of his involvement with the Occupy San Diego movement and protests in late 2011 and early 2012.  Mr. Kenney alleges this occurred during five separate incidents, or nine incidents if one counts separately the four purported assaults that occurred in a single day.  Claims regarding the November 2, 2011, December 10, 2011, and March 24, 2012 incidents have been dismissed and the claims regarding the other two incidents have been narrowed.  (ECF Nos. 385, 499.)

The remaining claims are: (1) § 1983 claim of excessive force and violation of First Amendment against Officer Koerber with respect to the October 14, 2011

incident; (2) § 1983 claim of unlawful seizure and violation of First Amendment against Sergeant Lawrence with respect to the January 31, 2012 incident; and (3) claim against the City and SDPD as to unlawful policies.

### A. OCTOBER 14, 2011 INCIDENT(S)

The first remaining incident(s) occurred on October 14, 2011. Plaintiff alleges that on that date, he was assaulted four times by various San Diego Police Department ("SDPD") officers. (FAC at ¶65.) Mr. Kenney claims that he was pepper-sprayed, assaulted twice with a "flesh-ripper device," which are believed to be Orcutt Police Nunchaku, and that he was grabbed by the throat and slammed to the ground.

On that day, SDPD was conducting an enforcement action to clear Civic Center Plaza of personal property, such as tents, sleeping bags, and other items that were in violation of the City's encroachment ordinance. The protestors had formed "human chains" by linking arms and surrounding the tents and other equipment to prevent officers from removing them and refused commands to move aside so that the items could be removed.

Officer Koerber was involved in the incidents involving the pepper spray and using a pressure point tactic by applying pressure to Mr. Kenney's mandibular pressure point to get him to release his linked arms and taking him to the ground. Other than that, Officer Koerber had no other contact with Mr. Kenney on October 14, 2011. Officer Koerber was not involved in any incident that day involving a "flesh ripper" or Orcutt Police Nunchaku. Additionally, at no time did Officer Koerber ever tell Mr. Kenney that he could not protest, participate in Occupy San Diego, or exercise his First Amendment rights. Moreover, no one from the City of San Diego or SDPD directed Officer Koerber to target Mr. Kenney because he was a member of Occupy San Diego or because he was exercising his First Amendment rights.

/ / /

### B. JANUARY 31, 2012 INCIDENT

On January 31, 2012, Sgt. Lawrence was assigned to the Civic Center Plaza detail. There were several people who were associated with Occupy San Diego in Civic Center Plaza milling around in small groups while she was there. As she was standing near her patrol vehicle, which was parked on Third Avenue, adjacent to Civic Center Plaza, SDPD officers Kevin Armentano and Steven Eraca approached her and informed her that a bag had been left alone in Civic Center Plaza and appeared to be abandoned. Sgt. Lawrence walked over to the area where the bag was and observed that no one was standing around the bag. She watched the bag for 7-10 minutes during which time, the bag remained unattended. Sgt. Lawrence then approved Officers Armentano's and Eraca's request to impound the bag.

After Officers Armentano and Eraca took custody of the bag, a small crowd of people began to follow them as they walked back to their patrol vehicle, which was also parked on Third Avenue. They were yelling "That's my stuff" or words to that effect. Sgt. Lawrence heard several people claiming ownership of the bag.

Sgt. Lawrence advised the group that since the bag had been left unattended and several people were now claiming ownership, the bag was being impounded and if it was their bag, they could go to the SDPD Property Room and claim it. She then instructed Officers Armentano and Eraca to leave. Shortly after that, Sgt. Lawrence reiterated to the crowd that she did not know who the bag belonged to, and if they were claiming it was theirs, they could go to the SDPD Property Room to claim it. She also told them the Property Room was open Monday through Friday in the afternoon, but that she did not know the exact hours.

A person Sgt. Lawrence later learned was John Kenney stated that the bag was his. She told him that she did not know that the bag was his and reiterated how he could claim it. At the time of the impounding of the bag, Sgt. Lawrence had no knowledge that the bag belonged to Mr. Kenney. She did not know who it belonged to at that time.

Sgt. Lawrence believed, based upon her observations that the bag was left unattended for 7-10 minutes, combined with Officers Armentano's and Eraca's reports to her that they had also observed the bag unattended for some period of time and believed it was abandoned, that it was reasonable to impound the bag as abandoned property. It was also within SDPD policies and procedures to impound the bag as unattended.

Sgt. Lawrence did not authorize the impounding of the bag because Mr. Kenney was involved in a protest, was a member of Occupy San Diego, or because he was exercising his First Amendment rights. No one from the City of San Diego or the San Diego Police Department directed Sgt. Lawrence to target Mr. Kenney. At no time did Sgt. Lawrence ever tell Mr. Kenney that he could not protest, participate in Occupy San Diego, or exercise his First Amendment rights.

### III.   SUMMARY OF THE LAW

#### A.   THERE WAS NO EXCESSIVE USE OF FORCE

"Fourth Amendment claims of excessive or deadly force are analyzed under an objective reasonableness standard." *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)). When evaluating a Fourth Amendment claim of excessive force, a court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them" based on the totality of the circumstances. *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)); *Espinosa*, 598 F.3d at 537. The inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interest at stake." *Glenn*, 673 F.3d at 871 (quoting *Graham*, 490 U.S. at 396).

The determination whether an officer used excessive force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20

vision of hindsight." *Graham v. Connor*, 490 U.S. at 396. The determination "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-397; *Jensen v. City of Oxnard*, 145 F.3d 1078, 1086 (9th Cir. 1998).

Police officers are not required to use the least intrusive degree of force possible; they are required only to act within a reasonable range of conduct. *Forrester v. City of San Diego*, 25 F.3d 804, 807-808 (1994); *see also Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment). The crucial issue is whether the officers acted within a reasonable range of conduct, not whether in hindsight they might have used a less intrusive degree of force.

Defendants contend that the force used by Officer Koerber was reasonable given the circumstances he faced at the time. Mr. Kenney was actively resisting officers' attempts to remove tents and other items from Civic Center Plaza at the time of the incident. The use of physical strength, a control hold, and pepper spray were reasonable and within police standards and training. Additionally, the law regarding the use of pepper spray in protest situations was not clearly established at the time of this incident, and Officer Koerber is entitled to qualified immunity as to this claim.

B. THERE WAS NO UNLAWFUL SEIZURE

> The Fourth Amendment says that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. [Citation omitted.] Its "central requirement" is one of reasonableness. [Citation omitted.] In order to enforce that requirement, this Court has interpreted the Amendment as establishing rules and presumptions designed to control conduct of law enforcement officers that may significantly intrude upon privacy interests.

*Illinois v. McArthur*, 531 U.S. 326, 330 (2001).

"[W]arrantless searches or seizures of abandoned property do not violate the fourth amendment." *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986).

Here, the impounding of the abandoned bag was reasonable. Sgt. Lawrence approved impounding of the bag based on her observations the bag was left unattended for 7-10 minutes, combined with Officers Armentano's and Eraca's reports that they had also observed the bag unattended for some period of time and believed it was abandoned. At the time of the impounding of the bag, Sgt. Lawrence had no knowledge that the bag belonged to Mr. Kenney; she did not know who it belonged to at that time. It was entirely reasonable for Sgt. Lawrence to approve impounding the bag which she had personally observed as unattended and unclaimed for up to 10 minutes, and which other officers had previously reported they had observed the same bag remain unattended and that it appeared to be abandoned. It should also be noted that this unattended bag was in a public square, near government buildings, and public safety concerns also warranted its impounding. Therefore, there can be no claim for an unlawful seizure of the bag against Sgt. Lawrence.

### C. THERE WAS NO VIOLATION OF FIRST AMENDMENT RIGHTS

Mr. Kenney alleges that the City Defendants violated his First Amendment rights, specifically, freedom of speech, assembly, communication and the right to protest and join political parties or organizations. (FAC at 34:10-11; 38:19-27; 39:10-18.) To establish this claim, Mr. Kenney must show that "by his actions [Defendants] deterred or chilled [Mr. Kenney's] political speech and such deterrence was a substantial or motivating factor in [Defendants'] conduct." *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999). Intent to inhibit speech "is an element of the claim." *Id.* at 1300-01.

Here, Mr. Kenney cannot establish, with respect to the October 14, 2011, incident, that Officer Koerber used any force against him because of Mr. Kenney's

speech, participation in protests at Occupy San Diego, or any other protected conduct of Mr. Kenney.  Rather, Officer Koerber believed that officer safety was compromised because the crowd was getting out of control and he believed that significant violence could erupt at any moment. Officer Koerber was concerned for his safety because the crowd significantly outnumbered the officers and he could not effectively ensure that his handgun would not be grabbed at any moment by someone. Moreover, at no time did Officer Koerber ever tell Mr. Kenney that he could not protest, participate in Occupy San Diego, or exercise his First Amendment rights. No one from the City of San Diego or SDPD directed Officer Koerber to target Mr. Kenney because he was a member of Occupy San Diego or because he was exercising his First Amendment rights. Accordingly, Mr. Kenney cannot establish that Officer Koerber intended to inhibit Mr. Kenney's speech or violated Mr. Kenney's First Amendment rights, and partial summary judgment as to this claim is appropriate.

With respect to the January 31, 2012 incident, Plaintiff cannot establish that Sgt. Lawrence approved impounding of the abandoned bag because of Mr. Kenney's speech, participation in protests at Occupy San Diego, or any other protected conduct of Mr. Kenney.  First, Sgt. Lawrence had never heard of or seen Mr. Kenney, nor had any other interaction with him prior to that date.  Moreover, Sgt. Lawrence had no knowledge that Mr. Kenney was involved with Occupy San Diego prior to this incident.

Additionally, Sgt. Lawrence approved impounding of the bag based on her observations that the bag was left unattended for 7-10 minutes, combined with Officers Armentano's and Eraca's reports that they had also observed the bag unattended for some period of time and believed it was abandoned. At the time of the impounding of the bag, Sgt. Lawrence had no knowledge that the bag belonged to Mr. Kenney; she did not know who it belonged to at that time. Sgt. Lawrence did not authorize the impounding of the bag because Mr. Kenney was involved in a

protest, was a member of Occupy San Diego, or because he was exercising his First Amendment rights. Accordingly, Mr. Kenney cannot establish that Sgt. Lawrence violated Mr. Kenney's First Amendment rights, and summary judgment as to this claim is appropriate.

### D. THERE WERE NO UNLAWFUL PRACTICES

Mr. Kenney's second cause of action against the City and SDPD is for an unlawful policy, custom, or habit pursuant to § 1983. Liability for a police officer's actions at the scene under § 1983 are solely personal. *Duisen v. Administrator and Staff, Fulton St, Hosp., No. 1, Futon, Mo.*, 332 F. Supp. 125 (D.C. Mo. 1971). Since the liability under § 1983 is personal, the doctrine of *respondeat superior* is unavailable to impose vicarious liability under this section on another. *Ellis v. Blum*, 643 F.2d 68 (2d Cir. 1981). A local government cannot be found liable under § 1983 based on a theory of *respondeat superior* alone. *Monell v. Dept. of Social Service of the City of New York*, 436 U.S. 658, 691 (1978).

In order to maintain a § 1983 action against a governmental entity, plaintiff must allege and present evidence that the allegedly unconstitutional activities of the police officer were pursuant to "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the entity's] officers." *Monell v. Dep't of Social Service of the City of New York,* 436 U.S. at 690; see also *Kirkpatrick v. City of Los Angeles*, 803 F.2d 485, 491 (9th Cir. 1986). Such a plan or policy may not be proved through reference to a single unconstitutional activity unless "proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). To do so would essentially impose liability upon a municipality simply because the entity hired one "bad apple." *Id*. at 821.

To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must establish (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a

policy; (3) that this policy "evidences a deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389-391 (1989).

Here, this Court has previously held that "the SDPD had constitutional policies and procedures and that the officers were trained and instructed regarding these policies." (ECF No. 385 at 19:3-4.) However, the Court held that there were no facts presented in the City's motion for summary judgment that the SDPD's policies were applied during the October 14, 2011 incident. (ECF No. 385 at 19:4-5.) The Court also declined to grant the City and SDPD summary judgment as to the *Monell* claim regarding the January 31, 2012 incident because of the disputes of fact regarding whether the backpack was left unattended. (ECF No. 385 at 19:6-10.)

Defendants contend that at trial, it will be conclusively established that SDPD's lawful policies were in force and applied during the October 14, 2011 incident and the January 31, 2012 incident. Moreover, Defendants will prove that Sergeant Lawrence observed that the backpack was unattended on January 31, 2012, and, therefore, SDPD's policy regarding the impounding of unattended property was properly applied.

Dated: October 17, 2017                    MARA W. ELLIOTT, City Attorney

By:*/s/ Kathy J. Steinman*
    Kathy J. Steinman
    Deputy City Attorney

Attorneys for Defendants
CITY OF SAN DIEGO, SAN DIEGO POLICE DEPARTMENT, KASEYLEE LAWRENCE and MATTHEW KOERBER
Email: KSteinman@sandiego.gov