UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN B. KENNEY,<br><br>  Plaintiff,<br><br>v.<br><br>THE CITY OF SAN DIEGO; SAN DIEGO POLICE DEPARTMENT; KASEYLEE LAWRENCE; and MATTHEW KOERBER,<br><br>  Defendants. | Case No.: 13cv248-WQH-AGS<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the motion for summary judgment filed by Defendants the City of San Diego and the San Diego Police Department. (ECF No. 591).

## I. PROCEDURAL BACKGROUND

On October 21, 2013, Plaintiff John B. Kenney initiated this action by filing a First Amended Complaint alleging that he was subjected to the deprivation of his rights under federal and state law as a result of his involvement with the Occupy San Diego protests in late 2011 and early 2012. (ECF No. 21). The Complaint alleged facts describing five

1

incidents involving the San Diego Police Department ("SDPD"), three named San Diego Police Officers, and Doe San Diego Officers 1-200.

On January 28, 2014, the Court granted the motion to dismiss portions of the Complaint filed by the City Defendants and the Sheriff's Department. (ECF No. 33).

On August 13, 2015, Defendants Lawrence, Thompson, Stum, City of San Diego ("the City"), and the SDPD filed separate motions for full or partial summary judgment. (ECF Nos. 330, 331, 332, 333).

On March 29, 2016, this Court entered an Order which stated in part:

> IT IS FURTHER ORDERED that 1) the motion for summary judgment (ECF No. 330) filed by Defendant Lawrence is denied in part and granted in part, 2) the motion for summary judgment (ECF No. 331) filed by Defendant Thompson is granted, 3) the motion for summary judgment (ECF No. 332) filed by Defendant Stum is granted, and 4) the motion for summary judgment (ECF No. 333) filed by Defendants City of San Diego and San Diego Police Department is denied in part and granted in part.
>
> All claims in the Complaint against Doe Defendant Police Officers, Defendant Lawrence, SDPD, and the City of San Diego for acts which took place on January 31, 2012 for excessive force, illegal search, Sixth Amendment, right to counsel, Eighth Amendment, Ninth Amendment, equal protection, Article four, false arrest, negligence, intentional infliction of emotional distress, and invasion of privacy are dismissed.
>
> All claims in the Complaint for negligence (third claim), assault (fourth claim), battery (fifth claim), negligent or intentional infliction of emotional distress (seventh claim), and invasion of privacy (twelfth claim) against Defendants San Diego Police Department and City of San Diego are dismissed.
>
> All claims in the Complaint against all Defendants for the alleged actions taken on November 2, 2011 and March 24, 2012 are dismissed for the reasons stated in this order.

(ECF No. 385 at 20–21). With respect to the unlawful policies and procedures claim against the City and the SDPD, the Court stated,

> The facts in this record establish that the SDPD had constitutional policies and procedures and that the officers were trained and instructed regarding these policies. There are no facts in the record regarding the application of these policies on October 14, 2011 and December 9, 2011. The Court concludes that there is a genuine issue of material fact as to whether Plaintiff may prevail on his claim regarding actions taken by officers on January 31, 2012. At this stage in the proceedings, the Court does not conclude that Defendant City of San Diego and SDPD are entitled to summary judgment in their favor.

(ECF No. 385 at 19).

On December 16, 2016, Defendants Kevin Armentano, Steven Eraca, Matthew Koerber, David Mitchell, James Milano, Rodolphe Sainte-Agathe, Craig Shumate, and Erick Valdez filed a motion for full or partial summary judgment. (ECF No. 461). On June 14, 2017, the Court granted in part and denied in part the motion for full or partial summary judgment. The Court stated:

> IT IS HEREBY ORDERED that the motion for full or partial summary judgment (ECF No. 461) filed by Defendants Kevin Armentano, Steven Eraca, Matthew Koerber, David Mitchell, James Milano, Erick Valdez, Rodolphe Sainte-Agathe, and Craig Shumate is denied in part and granted in part. The following claims remain for trial:
> 1) claim pursuant to 42 U.S.C. § 1983 of excessive force and violation of First Amendment against Defendant Koerber with respect to October 14, 2011;
> 2) claim pursuant to 42 U.S.C. § 1983 of violation of the First Amendment and Fourth Amendment against Defendant Lawrence as to January 31, 2012; and
> 3) claim against Defendant City of San Diego and Defendant SDPD as to unlawful policies.
> All other claims and parties are dismissed.

(ECF No. 499). On January 25, 2018, the Court held a hearing on motions in limine and other pretrial matters. (ECF No. 586). The Court ruled on a number of motions in limine

and granted the City and the SDPD leave to file a motion for summary judgment. (ECF No. 588). The remaining claim against the City and the SDPD is a claim for unlawful policies, customs, or procedures pursuant to 42 U.S.C. § 1983 in relation to the alleged excessive force and First Amendment violations on October 14, 2011 and the alleged First Amendment and Fourth Amendment violations on January 31, 2012 by members of the SDPD.

On February 1, 2018, the City and the SDPD filed a motion for summary judgment. (ECF No. 591). On February 8, 2018, Plaintiff filed a response in opposition to the motion. (ECF No. 598). On February 15, 2018, the City and SDPD filed a reply. (ECF No. 608). On February 15, 2018, the Court allowed Plaintiff additional briefing time on the motion for summary judgment. (ECF No. 611). On February 15, 2018, Plaintiff filed another response in opposition to the motion for summary judgment. (ECF No. 606). On February 21, 2018, the City and the SDPD filed another reply.[1] (ECF No. 615).

## II. FACTUAL BACKGROUND

Trial is set on Plaintiff's claims that his constitutional rights were violated by Defendant Koerber on October 14, 2011 and by Defendant Lawrence on January 31, 2012.

On October 14, 2011, the SDPD was conducting an enforcement action to clear the Civic Plaza of personal property believed to be in violation of the encroachment ordinance of the City. Protestors, including Plaintiff, had formed "human chains" by linking arms and surrounding the tents and other equipment to prevent officers from removing them. In an effort to move Plaintiff out of the way, Defendant Koerber tried to pry Plaintiff's arm

---

[1] The City and the SDPD request that the Court strike Plaintiff's second opposition to the motion for summary judgment as untimely and without leave of Court. Because the Court later granted Plaintiff's request for additional briefing time on the motion for summary judgment, this request is denied. (ECF No. 608 at 4–5; ECF No. 615 at 5).

4

free, used a pressure point tactic and head control takedown, and issued an oleoresin capsicum ("OC") spray in Plaintiff's direction.

On January 31, 2012, two SDPD police officers informed Defendant Lawrence that a bag had been left alone in the Civic Center Plaza and appeared to be abandoned. After walking over to the area and observing that no one was standing near the bag, Defendant Lawrence directed the police officers to impound the bag. Plaintiff subsequently stated that it was his bag.

Defendants Koerber and Lawrence are employed by the SDPD. The SDPD is a municipal department of the City of San Diego.[2] San Diego Municipal Code § 22.1801(b). The Court has previously concluded, "The facts in this record establish that the SDPD had constitutional policies and procedures and that the officers were trained and instructed regarding these policies." (ECF No. 385 at 19).

The City and the SDPD provide a Declaration by Boyd Long, the Assistant Chief for the SDPD at the time of the alleged incidents. (Boyd Decl., ECF No. 591-5). Boyd states,

> As the Assistant Chief of Patrol Operations I was either personally present or received reports during the events which occurred in the Civic Center in connection with the protest known as . . . "Occupy San Diego" or "Occupy SD" in late 2011 and early 2012. Moreover, I was personally present on October 14, 2011, during the events which occurred in the Civic Center that are the subject of this lawsuit.

*Id.* at ¶ 4. Boyd states that he is familiar with the policies, procedures, and customs of the SDPD and the City in effect at the time of the incidents relating to the use of force, the

---

[2] Pursuant to Federal Rule of Evidence 201, the Court grants the City and SDPD's request for judicial notice and takes judicial notice of the fact that "the San Diego Police Department is a municipal department of the City of San Diego as set forth in San Diego Municipal Code, Chapter 2, Article 2, Division 18, section 22.1801." (ECF No. 591-6)

5

impounding of property, arrests, custodial issues, and the training and supervision of SDPD officers. *Id.* at ¶¶ 5, 10, 15.

Boyd states that, with respect to the use of force, at the time of the subject incidents, it was "the policy, practice, procedure and custom of the SDPD" (1) "to train its personnel in the use of the safest most humane restraint procedures and force options currently known;" (2) "that force may be used to effect a detention or arrest, control a subject who is in lawful custody, prevent an escape, or protect the officer, the subject, or another person from injury or death;" (3) "that an officer who encounters a person exhibiting passive resistance behavior may use lesser controlling force techniques on that person;" (4) "that an officer who encounters a person exhibiting active resistance behavior may use greater controlling force techniques on that person." *Id.* at ¶ 7. Boyd states,

> Officers were also trained and instructed at the San Diego Regional Police Academy and at In-Service training sessions to use only reasonable force in making arrests, and in the defense of officers and others to injury. The training related to the use of force was provided to San Diego police officer met or exceeded the required number of training hours established by the State of California.

*Id.* Boyd further states,

> With respect to found or abandoned property, it was the policy, practice, procedure, and custom of the SDPD to impound property that appeared to be found abandoned, lost, or otherwise unclaimed. Personal property found on public property without a readily identifiable owner is presumed to be abandoned property pursuant to San Diego Municipal Code section 54.0212. All abandoned or found property that was determined to be of some evidentiary or monetary value, with a few exceptions for perishable, dangerous or hazardous items, was to be impounded in the SDPD Property Room. When impounded a impound entry into FileOnQ, the automated property management system, is required. The entry indicates information including the nature of the property (i.e. found, evidence, etc.), a description or inventory of each item impounded, when and where it was found, and the identification of the officer recovering property. A Property Release Form must be completed any time a member of SDPD relinquishes physical custody

> of impounded property. SDPD officers may not authorize the release of impounded property to themselves.

*Id.* at ¶ 12.

> With respect to free speech activities, it was the policy, practice, procedure and custom at the time of the subject incidents to allow protestors to legally protest or engage in free speech activities, but to also create a safe environment for everyone involved and ensure that no laws are violated. Officers were trained and instructed at the Police Academy and at In-Service training sessions regarding SDPD's policy regarding enforcement in relation to protests and other free speech activities.

*Id.* at ¶ 17. Boyd states that these policies, procedures, and customs were in effect and applicable on October 14, 2011 and January 31, 2012. *Id.* at ¶¶ 8, 13, 18. Boyd states, "No officer was instructed to disregard or ignore these policies, procedures, and customs in relation to the Occupy San Diego or Occupy SD Movement." *Id.* at ¶¶ 9, 14, 19.[3]

### III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The materiality of a fact is determined

---

[3] The description of the policies, procedures, and customs in the Boyd Declaration is consistent with the description of the policies, procedures, and customs in declarations filed in support of the City and the SDPD's motion for summary judgment filed on August 13, 2015. (ECF Nos. 333-13, 333-14, 333-15, 333-8).

7

by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322, 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in her favor. *See Anderson*, 477 U.S. at 255. To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

## IV. DISCUSSION

The City and the SDPD assert that Plaintiff has provided no evidence to dispute the prior finding of the Court that constitutional policies and procedures were in effect and applied on October 14, 2011 and January 31, 2012. The City and the SDPD contend that Plaintiff fails to produce any admissible evidence of inadequate training, failure to discipline, or ratification of any wrongful conduct. The City and the SDPD contend that they are entitled to summary judgment on the remaining *Monell* claims because Plaintiff has failed to present any disputed issue of fact and instead offers "speculation, conclusions, and theories with no evidentiary support[.]" (ECF No. 608 at 2). The City and the SDPD filed objections to evidence provided by Plaintiff on the ground that it is improperly authenticated, lacking in foundation, and irrelevant. (ECF Nos. 608-2; 615-2).

Plaintiff contends that the Court is biased in favor of Defendants and that disputed issues of material fact preclude summary judgment. Plaintiff contends that "COSD/SDPD . . . ratified the behavior of their SDPD personnel, such that it is their 'official policy.'"

8

(ECF No. 598 at 7). Further, Plaintiff asserts "no one has ever shown that any training, follow-up, or discipline was applied to any of the SDPD involved in any of the 'incidents' specifically detailed in the *FAC*." *Id.* at 11. Plaintiff contends that "COSD/SDPD targeted, assaulted, stole from, harmed and abused Plaintiff for years on end. This was SDPD '*policy.*'" *Id.* at 16

Title 42 U.S.C. § 1983 provides a cause of action against any person who, under color of state law, deprives any citizen of any rights, privileges, or immunities secured by the Constitution and laws of the United States. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative act, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)), vacated on other grounds, 556 U.S. 1256 (2009). A municipality or governmental entity cannot be found liable under section 1983 on a respondeat superior theory. Rather, such liability can be imposed only for injuries inflicted pursuant to a governmental "policy or custom." *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 694 (1978). In addition, there must be an affirmative link shown between the policy or custom and the particular constitutional violation alleged. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *Mendiola–Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (citing *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016)) ("Instead, to establish municipal liability under § 1983, a plaintiff must show 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'"). The alleged policy or custom must be the "moving force"

of the constitutional violations in order to establish liability under § 1983. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell*, 436 U.S. at 694).

In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court stated that "without more" a city is not "automatically . . . liable under § 1983 if one of its employees happened to apply the [constitutional] policy in an unconstitutional manner, for liability would then rest on *respondeat superior*." *Id.* at 387. However, the Court concluded that that under "limited circumstances" a municipality can be held liable for an unconstitutional application of a valid policy "if the employee has not been adequately trained and the constitutional wrong has been caused by that failure to train." *Id.* The Court held that a municipality may be held liable under § 1983 only where its failure to adequately train police officers amounts to a "deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." *Id.* at 389.

In this case, trial is set on Plaintiff's claims that his constitutional rights were violated on October 14, 2011 and January 31, 2012 by members of the SDPD. The City and the SDPD cannot be held liable under 42 U.S.C. § 1983 for the alleged constitutional violations of its police officers on October 14, 2011 and January 31, 2012 on a theory of *respondeat superior*. *See Monell*, 436 U.S. at 694; *City of Canton*, 489 U.S. at 387. Plaintiff must demonstrate "a direct causal link" between a municipal policy, custom or procedure and the alleged constitutional violations on October 14, 2011 and January 31, 2012. *See Castro*, 833 F.3d at 1075. The City and the SDPD provide evidence of the relevant policies, procedures, and customs in effect on October 14, 2011 and January 31, 2012. *See, e.g.*, Boyd Decl., ECF No. 591-5. The Court has ruled that on the dates of the alleged violations of Plaintiff's constitutional rights by SDPD officers, the policies and procedures relevant to the alleged violations were constitutional and the officers were trained and instructed

10

13cv248-WQH-AGS

regarding these policies. *See* ECF No. 385 at 19 ("The facts in this record establish that the SDPD had constitutional policies and procedures and that the officers were trained and instructed regarding these policies."). The City and the SDPD provide further evidence that no officer was instructed to disregard or ignore these policies, procedures, and customs in relation to the Occupy San Diego Movement in 2011 and 2012. *See* Boyd Decl., ECF No. 591-5. Plaintiff fails to provide evidence sufficient to create a disputed issue of material fact with respect to any failure to adequately train officers on the relevant policies, customs, and procedures of the SDPD and the City.[4] *See City of Canton*, 489 U.S. at 387–89.

Relying on *Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1991), Plaintiff also contends that the City and the SDPD can be held liable under *Monell* on a theory of ratification. In *Christie*, the Ninth Circuit Court of Appeals determined that "a municipality can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions" and the basis for those actions. *Id.* at 1238–39. The Court stated that "ratification requires, among, other things knowledge of the alleged constitutional violation." *Id.* at 1239. The Court further stated that, "A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification. Instead a plaintiff must prove that the policymaker approved of the subordinate's act." *Id.*; *see also Haugen v. Brousseau*, 339 F.3d 857, 875 (9th Cir. 2003) (citing *Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992)) ("A single decision by a municipal policymaker 'may be sufficient to trigger section 1983 liability under *Monell*, even though the decision is not intended to govern future situations,'

---

[4] The City and the SDPD file objections (ECF Nos. 608-2, 615-2) to Plaintiff's declaration and attached exhibits on the grounds of lack of foundation and improper authentication. Plaintiff lacks foundation for many of the statements in his declarations and none of Plaintiff's exhibits are properly authenticated. The Court has reviewed Plaintiff's submissions in their entirety (ECF Nos. 598, 606) and has considered all relevant and admissible evidence. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."); Fed. R. Civ. P. 56(c).

. . . but the plaintiff must show that the triggering decision was the product of a 'conscious, affirmative choice' to ratify the conduct in question."), amended by and reh'g denied 351 F.3d 372 (9th Cir. 2003), rev'd on other grounds 543 U.S. 194 (2004) (per curiam).

There is no evidence in this record that any alleged constitutional violation by SDPD officers on October 14, 2011 or January 31, 2012 was pursuant to a policy, custom, or procedure of the SDPD and the City, or that a final policymaker made a conscious, affirmative choice to approve of an unconstitutional act by a subordinate. Plaintiff fails to "set forth specific facts showing that there is a genuine issue for trial" with respect to the *Monell* claim against the City and the SDPD. Fed. R. Civ. P. 56(e). The Court concludes that the City and the SDPD are entitled to summary judgment as a matter of law.

## V. CONCLUSION

IT IS HEREBY ORDERED that the motion for summary judgment filed by the City of San Diego and the San Diego Police Department is GRANTED. (ECF No. 591).

IT IS FURTHER ORDERED that the parties shall resubmit proposed jury instructions, statement of the case, and verdict forms on or before March 16, 2018.

Dated: February 27, 2018

Hon. William Q. Hayes
United States District Court